UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
UNITED STATES *ex rel*, MAURICE
KESHNER and MAURICE KESHNER,
individually,

       Plaintiffs,

  -against-

IMMEDIATE HOME CARE, INC.,
NACHEM SINGER, and ERVIN
RUBENSTEIN,

       Defendants.
-------------------------------------------------x

**MEMORANDUM AND ORDER**
06-CV-01067 (FB) (VPP)

*Appearances*
*For the Plaintiffs:*
ANDREW LAVOOTT BLUESTONE,
ESQ.
233 Broadway, 27th floor
New York, NY 10279

*For Defendants Immediate Home Care, Inc. and Singer*
JACOB LAUFER, ESQ.
ZAHAVA SILVERMAN, ESQ.
Jacob Laufer, P.C.
65 Broadway, Suite 1005
New York, NY 10006

*For Defendant Rubenstein*
RAYMOND LEVITES, ESQ.
Levites & Associates LLC
10 East 40th St., Suite 3307
New York, NY 10016

**BLOCK, Senior District Judge:**

      Pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729-

3730, Maurice Keshner ("Keshner"), on behalf of himself and the United States, claims that defendants Nachem Singer, Ervin Rubenstein, and Immediate Home Care, Inc. (collectively, "defendants") conspired and committed fraud on the Medicare and Medicaid systems. Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims. Because Keshner is not an original source as to the claims against Singer and Rubenstein, and has not sufficiently pled a claim of fraud against Immediate, *see* Fed. R. Civ. P. 9(b), defendants' motion is granted.

I

Singer and Rubenstein own Immediate Home Care, Inc. ("Immediate"), which provides health-care services to homebound Medicare and Medicaid beneficiaries. Immediate employs home health care aides ("HHAs") who render services to provide short-term, non-medical care necessary to maintain patients' health or facilitate their treatment, such as assisting with bathing and dressing. Immediate receives a substantial portion of income from billing Medicare and Medicaid for the provision of these services. In order to receive federal reimbursement, Immediate is required to comply with conditions of participation, including employing properly trained and certified HHAs and billing accurately for the hours of work that certified HHAs perform.

On March 9, 2006, Keshner filed a complaint against Nursing Personnel Home

Care, Renaissance Home Care, and Immediate. On June 12, 2008, Keshner amended his complaint (the first amended complaint) to include, among others, Singer and Rubenstein. The parties eventually stipulated to the dismissal of several parties and by June 12, 2013, the sole remaining defendants included Immediate, Rubenstein, and Singer. The government declined to intervene.[1]

On July 28, 2015, with the court's permission, Keshner once again amended the complaint (the second amended complaint or "SAC") in an attempt to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure rule 9. *See* ECF No. 108 (the SAC).

In broad terms, the SAC alleges that defendants conspired to defraud Medicare and Medicaid by hiring and billing for the services of uncertified HHAs. Moreover, Keshner alleges that HHAs conspired with patients to falsify time-sheets in order to overbill Medicare and Medicaid, as well as paid patient families to perform HHA work. Lastly, he alleges that defendants falsified records in order to interfere with patients' access to the New York State long-term coverage care.

## II.

***The Public Disclosure Bar***

---

[1] On February 4, 2010, the Government elected to intervene as to certain defendants, including Nursing Personnel Home Care, and settled the matter as to them; it declined to intervene as to the remaining defendants. *See* ECF No. 16.

First, the Court considers whether the public disclosure bar compels dismissal of the claims against Singer and Rubenstein as a threshold matter.[2] Because Immediate was named in the original complaint prior to any relevant public disclosure, the Court only considers the bar as to Singer and Rubenstein.

The False Claims Act ("FCA") requires courts to dismiss any action in which the relator relied on publicly disclosed allegations, but was not the "original source" of those allegations:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> (iii) from the news media,

---

[2] Because "the statute now provides only that courts 'shall dismiss an action or claim' violating the public disclosure bar, it is no longer clear whether the requirement relates to jurisdiction." *United States, ex rel. Kolchinsky v. Moody's Corp.*, –F.Supp.3d–, 2016 WL551679 (S.D.N.Y. 2016) (citing *United States ex rel. Ping Chen v. EMSL Analytical, Inc.*, 966 F.Supp.2d 282, 293 (S.D.N.Y.2013); *cf. United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148 (2d Cir. 1993). Accordingly, the Court will consider only documents that may be considered on a motion to dismiss, including, in this case, judicially-noticeable public disclosures. *See Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (taking judicial notice of "the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents") (emphasis in original).

4

> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). Here, defendants claim that the same allegations made in the first and second amended complaint were publicly disclosed prior to the court filings. Accordingly, the district court must conduct a three-step inquiry: "First, it examines whether the relator's allegations have been 'publicly disclosed.' If so, it next asks whether the lawsuit is 'based upon' those publicly disclosed allegations. If it is, the court determines whether the relator is an 'original source' of the information upon which his lawsuit is based." *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009) (internal citations omitted).

There is no serious dispute that Keshner's allegations against Rubenstein and Singer are substantially similar to claims previously investigated and prosecuted by the state government–which resulted in their convictions–and subsequently reported in the media. *See, The People v. Immediate Home Care, Inc., Ervin Rubenstein, and Nachem Singer*, Indict. No. 10378-06 (NY Sup.) (the "State Court Action"); *Elliot Spitzer and New York v. Immediate Home Care, Inc., et al.*, Index No. 39092/2006 (NY Sup.); *see also*, Nicholas Confessore, *2 in Brooklyn Plead Guilty to Fraud in Home Care*, N.Y. Times, Aug. 28, 2007, at B3. Further, the National Association of Attorneys General reported on the convictions in their quarterly Medicaid Fraud

Report.[3] *See* ECF No. 119-3.

A relator's allegations are deemed "substantially the same" as public allegations if they would expose the same "essential elements" as the publicly aired fraud. *See U.S. ex rel. Kester v. Novartis Pharms. Corp.*, 43 F.Supp.3d 332, 346 (S.D.N.Y.2014); *see also U.S. ex rel. Kreindler & Kreindler*, 985 F.2d at 1159. The SAC substantially parrots the activities publicly disclosed in the media and court documents. Accordingly, for Keshner's *qui tam* action to survive the "public disclosure" bar, he must establish that he is an "original source" of the publicly disclosed information. *See* 31 U.S.C. § 3730(e)(4)(A).

To qualify as an "original source," an individual must have "direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 463, 127 S. Ct. 1397, 1403, 167 L. Ed. 2d 190 (2007) (citing 31 U.S.C. § 3730(e)(4)(B)). The Second Circuit has repeatedly held that "a *qui tam* plaintiff does not have [direct and independent knowledge] if a third party is the source of the core information upon which the *qui*

---

[3] Criminal indictments and agency reports are publicly disclosed information. *See Gold v. Morrison–Knudsen, Inc.*, 68 F.3d 1475, 1477 (2d Cir.1995) (finding the criminal indictments and fraud reports to be in the public domain and reasoning that agency reports prepared for the Army Corps of Engineers were "publicly disclosed information").

*tam* complaint is based." *United States v. New York Med. Coll.*, 252 F.3d 118, 121 (2d Cir. 2001) (per curiam); *accord Gold v. Morrison-Knudson Co.*, 68 F.3d at 1477; *United States, ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1158 (2d Cir. 1993).[4]

On August 27, 2007, Singer, and Rubinstein each pleaded guilty in the State Court Action to grand larceny, for defrauding Medicaid by submitting false claims for services by HHAs.[5] Specifically, Singer admitted,

> I intentionally caused Immediate to submit false claims to certified home health agencies that were then sent to New York State Medicaid . . . for services by home health aides. I knew that some of those claims . . . were false because they did not meet

---

[4] Ultimately the public disclosure bar is to preclude suits based on information that would have been equally available to a stranger to the fraud, had they chosen to look for it. *See United States, ex rel. Kolchinsky v. Moody's Corp.*, –F.Supp.3d–, 2016 WL551679 (S.D.N.Y. 2016).

[5] Immediate plead guilty, as well, but admitted to different activities than Singer and Rubenstein. Specifically, the corporation, through its attorney, stated that,
> During the period December 31, 2003 until November 1, 2006, in Kings County, Immediate intentionally submitted false claims . . . to New York State Medicaid. The claims were for purported services by home health aides. High managerial agents at Immediate knew that some of these claims. . . were for services by home health aides who did not have the proper and required certification to perform such services, and for claims that did not meet the regulations and procedures required by Medicaid.

ECF No. 117-4, 17.

> regulations and procedures required by Medicaid, including the fact that family members were being paid to take care of their relatives.

ECF No. 117-4, 12-13. Rubinstein admitted to substantially similar conduct. *See, id.* at 26-27 ("I facilitated the submission of unlawful claims which were submitted by Immediate to . . . New York State Medicaid . . . claims for services purportedly rendered by home health aides. . . . I knew that some of these claims, for more than $1,000 . . . were unlawful because they were for family members who were being paid to take care of their relatives . . . .").

The very next day, the New York Times published an article covering the convictions, stating that "the men hired home aides with inadequate training or fraudulent certification and provided them to agencies that in some cases billed Medicaid for work that was never done." ECF No. 119-3.

Keshner first amended his complaint on June 12, 2008 to include individual defendants Singer and Rubenstein–nearly a year after the publicized guilty pleas. He made his second amendment in 2015. Notably, the SAC relies upon defendants' previous admission of guilt in the State Court Action, excerpting their allocution into the complaint. *See* SAC ¶¶ 8-18. Moreover, the SAC does not allege knowledge that is "direct" and "independent" from the publicly available disclosures. *See United States ex rel. Hafter D.O.V. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1162

(10th Cir. 1999) ("Direct and independent knowledge is knowledge 'marked by the absence of an intervening agency . . . [and] unmediated by anything but the relator's own labor.'"). Instead, Keshner's SAC alleges third-hand information, speculation, and over-generalizations. *See, e.g.*, SAC ¶ 92 ("Vano Saralidze admitted to [Keshner] that. . . defendants falsified patient records. . ..."); *id*. ¶¶ 85-87 (regarding billing for falsified time-sheets, "had they conducted even a rudimentary examination, defendants could have easily ascertained the aides' false time reports.").

Keshner is not an original source, as to Singer and Rubenstein, because he does not have direct and independent knowledge of the information upon which his allegations are based. His self-serving, conclusory assertion that he is an "original source" will not save his complaint. *See United States, ex rel. Duxbury v. Ortho Biotech Products, L.P.*, 579 F.3d 13, 28 (1st Cir. 2009) (district court is under "no obligation to credit [plaintiff's] conclusory allegations, which simply parrot the elements of the statute"). Accordingly, defendants' motion to dismiss the claims as to Singer and Rubenstein is granted.

*False Claims Act Pleading Requirements*

The Court now turns to whether Keshner has satisfied the pleading requirements of Fed. R. Civ. P. 9(b) as to Immediate. As an alternative to the public disclosure bar, this analysis would also apply to the claims against Singer and

Rubenstein.

The FCA prohibits "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval" to the United States government. 31 U.S.C. § 3729(a)(1)(A). Accordingly, to prove their claims under the FCA, a relator "must show that defendants (1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *Mikes v. Straus*, 274 F.3d 687, 695 (2d Cir. 2001). The Second Circuit has held that FCA claims fall within the scope of Rule 9(b), which requires that plaintiffs "state with particularity the specific statements or conduct giving rise to the fraud claim." *Gold*, 68 F.3d at 1477; Fed. R. Civ. P. 9(b).

The pleadings must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Bishop v. Wells Fargo & Co.*, –F.3d–, 2016 WL2587426, *5 (2d Cir. 2016) (internal citations omitted). The complaint must be pled with a high degree of particularity. Accordingly, FCA pleadings are "inadequate unless they are linked to allegations, stated with particularity, of actual false claims submitted to the government that constitute the essential element of an FCA *qui tam* action." *U.S. ex rel. Bilotta v. Novartis Pharms. Corp.*, 50 F.Supp.3d 497, 510 (S.D.N.Y.2014) (citation omitted).

Here, Keshner has failed to meet his burden. The SAC contains general allegations of fraud without any particular details. For example, Keshner does not specify which HHAs were unqualified to bill for services rendered. Nor does Keshner allege any particular patients who falsified documents for an HHA or who did not receive the proper services. There is no allegation about any specific claims that were filed and paid, the dates or for what services.[6] Accordingly, defendants' motion to dismiss as to Immediate is also granted.

### III

For the foregoing reasons, defendants' motion to dismiss the claims is granted.

**SO ORDERED**

     /S/ Frederic Block_____

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 24, 2016

---

[6]At oral argument, the Court invited plaintiff's counsel to identify which allegations counsel believe satisfied Fed. R. Civ. P. 9(b). If there were a request for a further amendment, the Court would undoubtedly deny the motion. Leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), but "should generally be denied in instances of. . . repeated failure to cure deficiencies by amendments previously allowed." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).